**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **DAVID A. AVERY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **NO. 3:20-cv-00872** |
| | ) |
| **RAYMOND BYRD,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

David A. Avery, a pro se inmate challenging the conditions of his confinement under 42

U.S.C. § 1983, has filed a Motion (Doc. No. 5) for relief from the Court's November 16, 2020

Order determining, pursuant to 28 U.S.C. § 1915(g), that he must prepay the $400 filing fee.

Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action
> or proceeding [in forma pauperis] if the prisoner has, on 3 or more prior occasions,
> while incarcerated or detained in any facility, brought an action or appeal in a court
> of the United States that was dismissed on the grounds that it is frivolous, malicious,
> or fails to state a claim upon which relief may be granted, unless the prisoner is
> under imminent danger of serious physical injury.

Plaintiff argues that this limitation on pauper status for so-called "three-strikers," either alone or

in combination with the underlying requirement that prisoners pay a fee to file a federal lawsuit,

is unconstitutional because such statutory "barriers and fees" restrict his First Amendment right to

"freely" petition the courts for redress of grievances (id. at 2, 4), as well as his Fourteenth

Amendment rights to due process and equal protection. (Id. at 2, 4). Moreover, for purposes of his

equal protection argument, Plaintiff contends that he is protected from class-based discriminatory

barriers by Title II of the Americans with Disabilities Act, because he "as a convict/prisoner is

deemed incapacitated and is a person suffering from severe mental and physical disabilities." (Id. at 5).

These arguments are without merit. The Sixth Circuit Court of Appeals has "repeatedly reaffirmed" the constitutionality of Section 1915(g) against challenges based on equal protection, due process, and the right of access to the courts, among others. Pointer v. Wilkinson, 502 F.3d 369, 377 (6th Cir. 2007) (relying on Wilson v. Yaklich, 148 F.3d 596, 604–06 (6th Cir. 1998)); Shabazz v. Schofield, No. 3:13-cv-00091, 2013 WL 704408, at *9 (M.D. Tenn. Feb. 26, 2013) (recognizing that "[t]he Sixth Circuit has upheld the constitutionality of the 'three-strikes' rule against [such] arguments"). As to the requirement that plaintiffs pay a filing fee to access the court, the Seventh Circuit Court of Appeals has aptly noted that "[f]ederal courts are subsidized dispute-resolvers," and the requirement "that plaintiffs cover some of these costs cannot be called unconstitutional" because neither the Constitution nor any Supreme Court decision requires that access to the courts be free, but only "that reasonably adequate opportunities for access" be provided. Lewis v. Sullivan, 279 F.3d 526, 528 (7th Cir. 2002) (citing Lewis v. Casey, 518 U.S. 343 (1996)). Requiring a disabled prisoner to pay a filing fee, or even to pay the entire fee up front if the prisoner is a three-striker who is not in imminent danger, does not unreasonably impede his ability to access the courts. See Daker v. Bryson, No. 6:16-cv-57, 2017 WL 1053082, at *6 (S.D. Ga. Mar. 20, 2017), aff'd, 784 F. App'x 690 (11th Cir. 2019) ("Having to prepay his filing fee before the Court addresses the relative merits of his claims, unless he shows he is in imminent danger of serious physical injury, does not violate Plaintiff's rights."); Banks v. Roberts, No. 16-cv-720, 2016 WL 3963000, at *1 (E.D. Wis. July 21, 2016) (applying § 1915(g) "[w]ithout regard to [inmate's] mental condition"); Watley v. Collins, No. 1:06-cv-794, 2006 WL 3422996, at *1–2 (S.D. Ohio Nov. 28, 2006) (applying § 1915(g) to inmate alleging mental illness).

Plaintiff alternatively argues that the "inhumane conditions of his confinement," including the persistent risk of violence at the hands of other inmates and the inadequate nutrition provided in prison meals, "place[ ] him in constant 'imminent danger of serious physical injury,'" such that he should have been found to meet Section 1915(g)'s exception. (Id. at 2–3.) However, the Court has already considered these allegations and explained their insufficiency for demonstrating "imminent danger of serious physical injury" under the statute:

> Plaintiff does not allege any particular threat—from other inmates, the prison food service, or other sources—that would plausibly suggest that he was in "imminent danger of serious physical injury" at the time he filed the complaint. He alleges only the potential for injury due to the general level of violence in the prison, exacerbated by the inmates' ability to "exit their cells [and] roam around" and an insufficient number of guards. (Doc. No. 1 at 2.) But "conclusory allegations that overcrowding and understaffing create a potential for violence among inmates" will not suffice to establish imminent danger. Brooks v. Brooks, No. 2:18-CV-649-WKW, 2018 WL 3979490, at *2 (M.D. Ala. July 13, 2018), report and recommendation adopted, 2018 WL 3978979 (M.D. Ala. Aug. 20, 2018). Because "[p]risons are by definition places where violent people are housed involuntarily," McGhee v. Foltz, 852 F.2d 876, 880 (6th Cir. 1988), a nonspecific threat of prison violence cannot demonstrate the exceptional circumstance of "real and proximate" physical danger to Plaintiff, lest the exception swallow the rule of Section 1915(g). While Plaintiff believes that having a cellmate increases his risk of harm and specifically seeks the remedy of being housed without one, he does not allege any additional facts from which the Court could infer that having a cellmate is indeed a serious threat to his safety. Nor does Plaintiff specify any way in which the food provided by the prison has resulted in dangerous health consequences; rather, he simply concludes that the unbalanced diet must be "severely detrimental to [his] health." (Doc. No. 1 at 3.)

(Doc. No. 4 at 3–4.) Although Plaintiff asserts in his Motion that the threat he faces "is the actual inhumane conditions of confinement . . . concerning the lack of security and control over the inmate population" and "his debilitating physical condition caused by malnutrition stemming from an inadequate dietary feeding plan" (Doc. No. 5 at 3), he still fails to name any specific threat of violence he imminently faced at the time his complaint was filed, or to allege any facts from which

3

the Court could infer that the prison diet[1] imminently threatened his physical health. See Lapine v. Waino, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) (citing Vandiver v. Prison Health Servs., Inc., 727 F.3d 580, 585 (6th Cir. 2013)) (requiring allegations that "describe with sufficient detail why the prisoner is in imminent danger"). Accordingly, the imminent-danger exception to Section 1915(g)'s operation does not apply.

For the reasons given above, Plaintiff's Motion for relief from the Court's Order of November 16, 2020 (Doc. No. 5) is **DENIED**.

Nevertheless, per Plaintiff's request (see id. at 3), the Court will allow him additional time to pay the filing fee. Within **30 days** of the entry of this Order, Plaintiff **SHALL** remit the full filing fee of four hundred dollars to the Clerk of Court. Plaintiff is cautioned that, should he fail to comply with this Order within the time specified, the full amount of the filing fee will be assessed against him and collected from his inmate trust account, and this action will be dismissed for want of prosecution.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Plaintiff claims that the food served to inmates is nutritionally inadequate because it "consists of 95% starch" and lacks "organic fruits, vegetables, and milk," despite having an "average numerical calorie count." (Doc. No. 1 at 3.)

4